THE PEOPLE, ex rel. THE BOARD OF SUPERVISORS OF THE COUNTY OF ULSTER, Respondent, *v.* CORNELIUS A. J. HARDENBURGH, AS SUPERVISOR, ETC., Appellant.

The act of 1882 (Chap. 90, Laws of 1882), authorizing the town of S. to issue bonds to pay certain judgments against the town, did not repeal, so far as said town was concerned, the act of 1857 (Chap. 585, Laws of 1857), authorizing the board of supervisors of a county, in case of the failure

of a town collector to make or file his bond, to deliver the corrected assessment of the town with warrants to the sheriff of the county for collection.

Under the said act of 1882, the supervisors of said town had no authority to correct the tax-roll of 1881, by deducting therefrom the amount of the judgments without first issuing the bonds authorized by the act, and raising funds wherewith to pay said judgments.

Where, therefore, the town collector failed to give the required security for the collection of the original tax levy, and the supervisor of the town, without first issuing the bonds required by said act, in conjunction with the other persons named in said act (§ 4), deducted from the roll the amount of the judgments, apportioned the balance of the tax levy, and delivered the roll as thus corrected to the town collector, *held,* that the delivery of said roll and the collection of taxes under it was illegal; and, the said supervisor having refused to deliver up the original roll to the board of supervisors so that it might be delivered to the sheriff for collection, in accordance with a resolution of said board, that a mandamus was proper requiring such delivery.

Also, *held,* that said supervisor, having by his own neglect or mistake, deprived the judgment creditors of the right to enforce their claim in the manner prescribed by the act, was in no position to insist that another remedy should be pursued.

(Argued November 14, 1882; decided November 28, 1882.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department made September 23, 1882, which affirmed an order of Special Term directing the issuing of a peremptory writ of mandamus herein, the requirements of which, as well as the material facts are stated in the opinion.

*D. M. De Witt* for appellant. The words " money raised " in the fourth section of the act in question, should be read "money to be raised " or " money hereinbefore provided to be raised." (*Miller* v. *Solomon,* 7 Exch. 546; *Smith* v. *People,* 47 N. Y. 341; *People* v. *Utica Ins. Co.,* 15 Johns. 381; Potter's Dwarris on Statutes, 734, 231; 1 Kent's Comm. 462; *Matter of Comm'rs of Wash. Park,* 52 N. Y. 137.) It could not have been the intention of the legislature in passing this act, that the raising of the money by the issue and sale of bonds should precede the alteration of the tax-roll. (*Chapman* v. *Gates,* 54 N. Y. 143–6.) To carry out the purposes of a

statute, courts have interpolated or omitted words in the text or have restrained or enlarged their meaning. (*Bradley* v. *Ward et al.*, 58 N. Y. 401, 409; *Murray* v. *N. Y. C. R. R. Co.*, 4 Keyes, 274; *In re Trustees of N. Y. & B. Bridge*, 72 N. Y. 527.) The alteration of the tax-roll by the deduction of the amount of the judgment to be paid by the proceeds of the bonds issued under the act is so necessary a consequence of the issue of the bonds that the act in question cannot be said to contain more than one subject, and that subject is sufficiently expressed in its title. (*Kerrigan* v. *Force*, 68 N. Y. 381, 384; *Matter of N. Y. & B. Bridge Co.*, 72 id. 533; *In re Met. Gaslight Co.*, 85 id. 526.) The exigency, to meet which the act authorizing the delivery of the roll to the sheriff was passed, does not exist in the present instance, and therefore the relator has no right to the roll for such a purpose. (1 R. S. 340, § 3; 347, §. 30; 346, § 19; Laws of 1874, chap. 543.)

*Howard Chipp, Jr.*, for respondent. The board of supervisors is a continuous body and the statute of 1857 should therefore be read as referring to the board of supervisors in being when the action is to be taken. (*Sup. of Chenango Co.* v. *Birdsall*, 4 Wend. 453–460; *Newman* v. *Sup. Livingston Co.*, 45 N. Y. 676–680; *People* v. *Sup. Chenango Co.*, 8 id. 317–33.) Chapter 90, Laws of 1882 is a local statute by its terms permissive and not mandatory. (*Malcolm* v. *Rogers*, 5 Cow. 188; *Baldwin* v. *New York*, 2 Keyes, 387, 410; *Anderson* v. *Van Tassel*, 53 N. Y. 631.) If the Law of 1882 is to be construed as authorizing the correction of the tax-roll and the collection of the taxes, exclusive of the judgments, as distinct and valid acts without reference to the main purpose of the act respecting the issue of the bonds, and which is the purpose expressed in the title, then it is unconstitutional, as in that case it certainly embraces several subjects which are not expressed in its title. (State Const., art. 3, § 16; *Gaskin* v. *Meek*, 42 N. Y. 186; *People* v. *Hills*, 35 id. 449; *People* v. *Briggs*, 50 id. 553.) Mandamus is the proper remedy. (2 Black. Comm., 110; 2 Crary Prac. Sp. Pro. 52.) The fact

that the taxes, or a portion of them other than the judgments, have been collected does not help the board out of its embarrassment, as by chapter 554, Laws of 1880, the judgments in question are made a town charge, and in case of failure to collect them with the other town expenses the board would be guilty of a disregard of duty and might perhaps be held personally liable therefor. (*Amy* v. *Supervisors,* 11 Wall. 166; *Supervisors* v. *United States,* 4 id. 435.)

MILLER, J. The mandamus issued in this case commanded the defendant as supervisor of the town of Shawangunk, Ulster county, to surrender to the relator or its committee, or some one of them, or its clerk the corrected assessment-roll of the said town for the year 1881, in order that the same might be delivered by the board of supervisors, with the proper warrant for the collection of the taxes laid therein, to the sheriff of Ulster county, in accordance with the provision of chapter 585, Laws of 1857. The collector of the town being unable to furnish the requisite security, in consequence of the large amount to be collected in judgments upon bonds issued by the town, another collector was appointed, who also failed to comply with the law in this respect. Under the provision of the act cited the duty of collecting the taxes then devolved upon the sheriff of the county. To enable the town to pay the judgments which were included in the tax-roll, as well as to collect the ordinary taxes, chapter 90, Laws of 1882, was passed by the legislature. The object of that act mainly was to authorize the collection of money for the payment of the bonds, and but for this large indebtedness no difficulty would have occurred in collecting the ordinary taxes. It was enacted for this express purpose and had it been carried out in accordance with its provisions and the intention of the law makers, it is fair to assume there would have been no difficulty in regard to the matter.

The first section of the act last cited conferred authority upon the town to issue bonds for a sufficient amount to pay off the judgments which had been obtained against it, and

which were included in the tax-roll. The second section provided that the bonds should be issued within thirty days after the passage of the act, and made payable as therein stated. The third section made provision for the execution of a bond by the supervisors before the issuing of any such bonds. The fourth section directed the supervisor, immediately after the passage of the act, in conjunction with other officials named, to correct the present assessment roll of the town by deducting therefrom "the amount of money raised on said bonds," and that he should "apportion the balance of said tax levy ratably among the tax-payers of said town, with the moneys thus raised on such town bonds, together with such sum as shall be raised by tax in the present tax-roll for that purpose, the said supervisor shall at once pay, satisfy and discharge all of the said judgments." The fifth and sixth sections contained other details not necessary to be stated, and the seventh section declared that the supervisor shall deliver the tax-roll, after correction, to the collector, upon his giving the bond required by law, and authorizes him to collect the same and extend the time of collection. The supervisor of the town, claiming to act under said statute, without issuing any bonds, in conjunction with the persons named, deducted from the tax-roll $27,000, about the amount of the judgments, apportioned the balance of the tax levy and delivered the roll so corrected to the town collector, who was proceeding to collect the same when the board of supervisors adopted a resolution that the original roll should be delivered to the sheriff for collection. Defendant refused to deliver up the roll.

Taking the various provisions of the statute of 1882 together, in connection with the circumstances attending the failure to collect the taxes named in the assessment roll, it is very apparent that the different provisions to which we have referred were intended to be executed and carried out in harmony with the theory upon which the act last cited was framed. The whole amount of the taxes was to be paid by the means indicated, and every thing done in pursuance of the act was to be performed in accordance with its provisions for the purpose of

effecting its object. The bonds could not be issued under the law cited without the issuing of the warrant to collect the other portion of the taxes which were included in the original assessment roll, nor could the assessment roll be corrected and signed without the issuing of the bonds. Both these acts were to be in harmony with each other, and were essential to the proper execution of the provisions of the law in question; if one of them was done without the other the act was not carried out, its object was defeated and the proceedings under it were without validity and in direct contravention of the law. The correction and the signing of the assessment roll by the supervisor and the collection of the taxes under the same before the bonds were issued was an illegal act and without the authority of law. It could only be done after the bonds were issued and the money raised thereon in pursuance of the provisions of the law in question, and it was a departure from the law to attempt to collect a portion of the taxes without issuing the bonds. The statute in question was a remedial statute intended for the relief of the town from the embarrassment under which it labored, and the language employed must be construed and regarded as permissive merely, and not arbitrary and imperative. The act of 1857 provided an ample remedy for the collection of the taxes by the sheriff. That act was not repealed by the act of 1882, it was merely suspended temporarily to relieve the town from the collection of so large an amount at one time, which would be burdensome upon its taxpayers and injurious to their interests. It was a privilege extended by means of which time was given for the payment of the judgments, and if the town neglected or failed to avail itself of this privilege which the law had conferred, the statute of 1857 still was applicable and could be carried into effect. The two statutes should be construed together so as to give effect to each one. The construction which we have given to carry out this purpose avoids the result of a repeal by implication, which is not favored in law.

The counsel for the appellant insists that in the construction of the statute the words " money raised " in the fourth section

of the act in question should be read "money to be raised" or
"money herein before provided to be raised." We think this
position cannot be upheld. The section evidently contemplates
the issuing of the bonds and the raising of the money as pre-
liminary to the altering of the tax-roll and the collection of the
taxes therein. It mentions twice the money raised on the
bonds and evidently intended to refer to it as a past transaction,
as a thing which had been done and not as something which
remained to be done after the tax-roll had been corrected and
the money therein collected. It also speaks of money which
shall be raised, thus indicating that the altering of the assess-
ment-roll and the collection of the taxes was a step to be taken
in the future. The construction contended for would be con-
trary to the plain import of the language employed and the
manifest intention of the law-makers and is not sustained by
any rule of law. Nor is there any force in the contention of the
appellant's counsel that it was not intended that the raising of
the money by the issue and sale of the bonds could not precede
the alteration of the tax-roll although the amount was fixed and
settled and the bonds could not be sold less than par. It is
not apparent why the tax-roll should be signed and collected
prior to the raising of this sum. The raising of money to pay
the bonds was the main object of the act of 1882, and the col-
lection of the taxes otherwise than this was incidental to that
purpose. The bonds were to be issued and out of their avails
the judgments were to be paid and the taxes otherwise were
to be collected and paid in accordance with the usual custom.
They were separate acts, designed to relieve the tax payers from
paying a large amount of money which would have borne very
oppressively upon them and as a condition precedent to reliev-
ing them from the burden thus existing. Some stress is laid
upon the use of the words "immediately after the passage of
this act," which are employed in the fourth section, and it is
claimed that as no money had been raised no deduction was
then possible. This language must receive a reasonable inter-
pretation in connection with the other words of the act, and
especially with the fourth section ; this, we think, modifies its

meaning and it must be regarded as having reference to a period subsequent to the issuing of the bonds and in this way all the provisions of the act can be made harmonious.

Nor do we think there is any ground for claiming that because the legislature has prescribed the means for the raising of the money for paying the judgments, the money can be said to be raised under the provisions of the act. The effect of the construction claimed by the appellant's counsel would be to defeat the main purpose of the act, the issuing of bonds and the payment of the judgments by the money raised therefrom. If the bonds had been issued and the money raised, then no question would arise as to the legality of the corrected tax-roll and the collection of the taxes carried out upon the same, and such issue cannot be considered as a matter disconnected therefrom.

It is suggested that the rights of the judgment creditors may be protected by a proceeding by mandamus to compel the supervisor to sign and seal the bonds. There are many difficulties in the way of such a proceeding; it would require that security should be given by the supervisor before the bonds were issued, and as the defendant could not be compelled to file the security which is a pre-requisite for that purpose, and as this depends upon his own willingness to furnish it and his ability to procure it, the embarrassment of such a proceeding is quite manifest. It is difficult to see how the defendant could be compelled, by a mandamus, to perform an act, the validity of which depends upon the willingness and the action of other parties who have no connection with this proceeding and upon whom no duty is imposed. But a more complete answer to this position is, that the issuing of these bonds was beyond any question the basis and the foundation upon which the provisions of the act rested and the right to collect the taxes independent of the judgment depended, and the defendant, by his own neglect or mistake having deprived the judgment-creditors of the right to enforce their claim in the manner provided by the act of 1882, is in no position to insist that another remedy must be pursued. Another answer to this claim is that the act

having failed to accomplish its purpose by reason of the conduct of the defendant, and the act of 1857 being reinstated thereby, the relators should not be required to pursue a doubtful remedy to compel the issuing of the bonds, but have a right to rest upon the provisions of the act of 1857 for the collection of the judgments under the original roll.

, We are not called upon, on this appeal, to consider the effect upon the tax payers, of an affirmance of the order granting the mandamus.

No other question is raised which demands discussion, and our opinion is that the mandamus was properly granted and the order of the General Term should be affirmed.

All concur except TRACY, J., absent.

Order affirmed.